| | |
|---|---|
| PETER T. POST,<br><br>    Plaintiff,<br><br>    v.<br><br>THE NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA, et al.,<br><br>    Defendants. | No. 18 CV 77<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Peter Post was a foreman in Metra's mechanical department who claims that he was demoted due to his protected speech and whistleblowing activity, in violation of 42 U.S.C. § 1983 and the Illinois Whistleblower Act, and that Metra inflicted emotional harm on him. Defendants move to dismiss the amended complaint. For the reasons explained below, the motion is granted.

**I.    Legal Standards**

To survive a motion to dismiss, a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, I accept the facts alleged in the complaint as true and draw reasonable inferences from those facts in Post's favor, but I do not accept as true the complaint's legal conclusions. *Id*. at 678–79. I review the complaint, exhibits attached to the complaint, and, if they are central to the claims, documents referenced by the complaint. *Otis v. Demarasse*, 886 F.3d 639, 647 n.33 (7th Cir. 2018).

**II.     Facts**

Plaintiff Peter Post was a foreman in Metra's mechanical department. [30] ¶ 16.[1] In 2015, a representative from Metra's Equal Employment Opportunity department asked Post about a complaint lodged against another employee, and Post said that the employee "lacked good interpersonal skills." [30] ¶¶ 17–19. Post later found out that the employee he had commented negatively about was a close associate of Art Olsen, the mechanical department's director. [30] ¶¶ 12, 20. Olsen began fabricating complaints that Post was underperforming at work. [30] ¶ 21. To escape Olsen, Post requested a transfer to a different Metra location. [30] ¶ 24. The transfer was successful, and Post's time at the new location was uneventful. [30] ¶¶ 24–25.

But in 2017, Olsen transferred to Post's new location, and issues arose. [30] ¶ 25. At the request of one of Post's supervisees, Post and a coworker helped her with paperwork for Family and Medical Leave Act leave. [30] ¶ 26. Olsen, along with two of his managers, Kevin Clifford and James Derwinski, brought a disciplinary charge of "[HIPAA] violations" against Post based on the supervisee's incorrect completion of her paperwork. [30] ¶ 26. Post's coworker who also gave advice on the paperwork was not disciplined. [30] ¶ 31.

Shortly after, a Metra train car derailed, caused by a combination of factors including an employee's failure to follow the proper protocol and the age and disrepair of the rails. [30] ¶¶ 34–35. Post and the employee at fault, Michael Forneris, tried to

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The facts are taken from the amended complaint, [30].

submit a report to the Confidential Close Call Reporting System (C3RS),[2] but the system was not working. [30] ¶¶ 34, 39. Post and Forneris immediately called their manager to report the derailment and told him that the C3RS system was not working, and the manager replied that the two should just go home. [30] ¶¶ 37, 40. The manager then called them back to say that Olsen wanted them to prepare a written report immediately, which they did. [30] ¶¶ 41–42. When the C3RS system was up and running a couple of days later, Post and Forneris submitted their reports about the derailment. [30] ¶ 42. Forneris admitted that it was his fault in the report. [30] ¶ 38. Post later had a follow-up conversation with a NASA representative about the derailment. [30] ¶ 44.

Forneris was charged with a disciplinary violation due to the derailment, [30-1] at 23–24, but he was never disciplined. [30] ¶ 45. Post, however, was charged with a disciplinary violation, and a hearing was set to address both the HIPAA- and derailment-related charges. [30] ¶ 45. Post complained about the charges to Metra's EEO department and the foremen's union, neither of which was helpful. [30] ¶ 46. When arranging for a conference room for the hearing, Olsen commented to Metra staff that he had to check the temperature because there was "going to be a hanging." [30] ¶ 47. At the hearing, Post was accused of lying about the HIPAA and derailment matters, [30] ¶ 48, and soon after, Post was given the choice between being fired or accepting a demotion. [30] ¶ 49. Post chose the demotion. [30] ¶ 50.

---

[2] C3RS is a partnership between NASA, the Federal Railroad Administration, and other participating organizations that collects reports about unsafe conditions or events in the railroad industry. [30–1] at 2.

**III. Analysis**

    **A. Section 1983**

        *1. Official Capacity Claims*

Post brings his claims against Clifford, Derwinski, and Olsen in their official and individual capacities. Pleading a claim against them in their official capacities is just another way of pleading a claim against Metra. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The complaint does not allege any claims against Metra, noting that it "is a party to this matter solely for purposes of indemnification," [30] ¶ 10, nor could it, absent allegations that a Metra policy or custom caused the alleged constitutional violations. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978).[3] All the official capacity claims are dismissed.

With respect to the individual capacity claims, defendants argue that Post has not adequately alleged that they were personally involved in the conduct. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) ("It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation."). Supervisors may be personally involved in a constitutional deprivation for "essentially directing or consenting to the

---

[3] In his brief, Post claims that "[d]iscovery will likely confirm what Plaintiff is alleging here, that Metra has an ingrained, longstanding custom of inflicting excessive discipline and different, less favorable terms and conditions of employment on certain of its employees." [35] at 5. This "custom" is not alleged in the complaint. Nor are "excessive discipline" and unequal employment terms and conditions the basis for Post's claims against the individual defendants. Post has not alleged a viable *Monell* claim against Metra. That being said, even without a *Monell* claim, Metra could remain a party for indemnification purposes if there were a substantive claim against a defendant in his individual capacity. See 745 ILCS 10/9-102; *Carver v. Sheriff of LaSalle Cty., Illinois*, 324 F.3d 947, 948 (7th Cir. 2003).

4

challenged conduct." *Id*. at 615. Post alleges that Olsen repeatedly harassed him, all defendants "supported" his demotion, [30] ¶ 49, and Clifford and Derwinski "had knowledge" of Olsen's harassing conduct. [30] ¶ 53. Whether the complaint sufficiently alleges defendants' personal involvement in a constitutional violation is questionable, but the larger issue is that the complaint does not allege a constitutional violation.

### 2. *First Amendment Retaliation*

Post claims that defendants retaliated against him for exercising his right to free speech, in violation of the First Amendment.[4] To state a claim for First Amendment retaliation, "a public employee first must prove that her speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). The First Amendment protects a public employee's speech when she speaks "as a citizen on a matter of public concern." *Id*. Public employees do not speak as citizens when they "make statements pursuant to their official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Matters are of a "public concern" when they relate to a "legitimate news interest" or "a subject of general interest and of value and concern to the public at the time of publication." *Kubiak*, 810 F.3d at 482 (citation omitted). Whether speech addresses a public concern is considered by reference to the "content, form, and context" of the speech, including "whether the objective of the

---

[4] Post also frequently refers to harassment, which can be a type of retaliation. *See Massey v. Johnson*, 457 F.3d 711, 720 (7th Cir. 2006).

5

speech . . . was to 'bring wrongdoing to light' or to 'further some purely private interest.'" *Id*. at 482–83 (citations omitted).

Post does not clearly identify which speech alleged in the complaint forms the basis for his retaliation claim, but he seems to primarily rely on his C3RS report about the derailment. He notes that train derailment "is quite arguably a matter of public concern," [35] at 5, which it very well may be, but the first question is whether he was speaking as a public employee or a private citizen. *See Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 509–10 (7th Cir. 2007). Post advances no argument that he submitted the C3RS report as a private citizen. To the contrary, the complaint alleges that Metra employees were encouraged to submit C3RS reports, [30] ¶ 43, and describes Post's report as "required." [30] ¶ 3. Indeed, the Metra C3RS memorandum attached to the complaint provides that when a Metra employee "observes a safety problem or experiences a close call event, he or she should report the problem or event and describe it in detail to NASA." [30-1] at 10. So when Post submitted his C3RS report, he was a public employee speaking pursuant to his official duties, not a private citizen, and his speech is not protected.

Nor does the First Amendment protect Post's statements to his coworker to help her with her FMLA paperwork. Assuming he was acting as a private citizen, his coworker's FMLA paperwork is not a matter of public concern. The complaint does not allege the specific content of Post's statements, but the disciplinary charges suggest Post advised his coworker "to list early quits and later arrivals which [her] physician did not authorize to Metra's medical department." [30-1] at 16. These

6

statements, advice to a coworker about her personal paperwork, are of a private concern, not something that the public would have interest in or anything newsworthy. *See* [35] at 7 ("[Post] . . . did it as a personal favor."). Post has not provided any argument to the contrary.

Though it is not clear Post intends to rely on them, his statements to EEO cannot form the basis of his retaliation claim either. Any claim based on the 2015 statements, in which he told EEO representatives that a coworker under investigation "lacked good interpersonal skills," [30] ¶ 19, is time-barred. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018) (statute of limitations for § 1983 claims filed in Illinois is two years).[5] Post invokes the continuing violation rule, arguing that the 2015 statement and subsequent retaliation from Olsen is part of the overarching pattern of retaliation, but the rule "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005). Post alleges that after his 2015 statement to EEO representatives, Olsen retaliated against him by making up complaints about his work performance—that retaliation was a discrete action that Post could have acted on then and is now too late to take up. Even if it were timely, Post could not succeed, because the statement does not relate to a matter of public concern. Whether one has good interpersonal

---

[5] Post points to two "notable cases" finding that a five-year statute of limitations applies to § 1983 claims. *See Shorters v. City of Chicago*, 617 F.Supp. 661, 666 (N.D. Ill. 1985); *Johnson v. Arnos*, 624 F.Supp. 1067, 1068 (N.D. Ill. 1985). The Seventh Circuit expressed its disapproval and abrogation of those cases long ago. *See Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998); *Kalimara v. Illinois Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989).

7

skills is not of general interest to the public, even though the statement was made in the context of an EEO investigation that may (or may not) have been of public concern. The same is true of Post's 2017 complaint to EEO representatives. Though Post does not describe the content of his complaint, he suggests it was about the disciplinary charges against him, which are of a personal nature. *See Kubiak*, 810 F.3d at 484; *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013) ("[I]f the objective of the speech—as determined by content, form, and context—is simply to further a purely personalized grievance, then the speech does not involve a matter of public concern.").

Because Post has not alleged facts that suggest he engaged in protected speech, his First Amendment retaliation claim is dismissed.

### 3. Other Constitutional Violations

For the sake of completeness, I will address Post's hints at pursuing other constitutional violations. The complaint alleges that defendants' conduct created a "hostile and offensive work environment." [30] ¶¶ 60–62, 66. Such language typically suggests a Title VII claim, but nothing in the complaint suggests discrimination against Post on the basis of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the briefing, Post suggests that his claims include one for a violation of his equal protection rights. [35] at 4–5. The complaint does not allege facts to support an equal protection claim, including under a class-of-one theory. See *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000) (equal protection claim requires plaintiff to demonstrate "(1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3)

8

the defendant acted with discriminatory intent"); *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594 (2008) ("[A] 'class-of-one' theory of equal protection has no place in the public employment context."). Post also mentions due process, [35] ¶ 5, a violation of which is unsupported by allegations in the complaint, so I understand it to be a reference to the application of the First Amendment to the states by way of the Fourteenth Amendment.

### B. Illinois Whistleblower Act

The Illinois Whistleblower Act[6] prohibits an employer from retaliating against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Post's whistleblower claim is based on his C3RS report, [35] at 7, but he has not alleged that the report disclosed any violation of law or that he reasonably believed it did. Post did not allege that the derailment involved any illegal activity. The closest he comes is alleging that Forneris failed "to follow proper protocol," [30] ¶ 34, but a protocol is not necessarily a government law, rule, or regulation. Metra's disciplinary charge against Forneris suggests he violated Metra rules, not state or federal laws. [30-1] at 23. The same is true of any track deficiencies. And even if the derailment did involve

---

[6] With no federal claim remaining in the case, I would ordinarily relinquish supplemental jurisdiction over the remaining state law claims. *See Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 593 F.3d 507, 513 (7th Cir. 2010). But it is within my discretion to retain jurisdiction when it serves "the values of judicial economy, convenience, fairness, and comity." *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008) (citation omitted). Because the remaining state law claims are not complicated and do not involve novel issues of Illinois law, I choose to retain jurisdiction over them for efficiency's sake.

illegal activity, Post does not allege that he knew that, or reasonably believed it, or included that information in his C3RS report or discussion with NASA. Though Post does not need to identify any particular laws he believed were violated, he must allege facts from which to infer some illegality. Because he has not, Post's whistleblower retaliation claim is dismissed.

## C. Infliction of Emotional Harm

Defendants argue that Post's claims for negligent and intention infliction of emotional harm lack any supporting factual allegations, and Post does not defend his claims in his response brief, so he waives them. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Anyway, the claims would not have survived. An IIED claim requires Post to plead "extreme and outrageous conduct" by defendants, meaning conduct that is "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Dixon v. Cty. of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) (citation omitted). None of the allegations about defendants' conduct meet the high bar of "severe and outrageous," particularly since Post's retaliation theories have been dismissed. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 288 (7th Cir. 2015) ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress." (quoting *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 153 (1st. Dist. 1999))). And a negligent infliction of emotional distress claim requires defendants to have had a duty to not cause Post emotional harm, but

10

Illinois courts do not recognize such a duty in the employment context. *See Sommers v. Household Int'l, Inc.*, No. 98 C 4539, 1999 WL 1285858, at *9 (N.D. Ill. Dec. 30, 1999) (citing *Brogan v. Mitchell Int'l, Inc.*, 181 Ill.2d 178, 185 (1998)).

## IV. Conclusion

Defendants' motion to dismiss [33] is granted. The amended complaint is dismissed with prejudice.[7] Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: October 22, 2018

---

[7] The dismissal is with prejudice because Post has already amended his complaint once and this time did not request leave to amend the complaint or propose any amendments. Without any proposals before me, I do not see how he could remedy the amended complaint's fatal flaws. *See Webb v. Frawley*, —F.3d—, No. 18-1607, 2018 WL 4924354, at *9 (7th Cir. Oct. 11, 2018).

11